1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Evan C. Borges (State Bar No. 128706)
*EBorges@GGTrialLaw.com*
Michael P. McMahon (State Bar No. 258058)
*MMcMahon@GGTrialLaw.com*
GREENBERG GROSS LLP
650 Town Center Drive, Suite 1750
Costa Mesa, CA 92626
Telephone:   (949) 383-2800
Facsimile:   (949) 383-2801

*Proposed General Bankruptcy Counsel for*
*Chapter 11 Trustee John C. Hueston*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No. 8:15-bk-12278-CB |
| MORGAN DREXEN, INC., a Nevada corporation, | Chapter 11 |
| Debtor. | **NOTICE OF MOTION AND EMERGENCY MOTION OF CHAPTER 11 TRUSTEE FOR INTERIM AND FINAL APPROVAL OF THE USE OF CASH COLLATERAL FOR THE PERIOD FROM MAY 14, 2015 THROUGH AUGUST 28, 2015; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF EVAN C. BORGES AND BRAD W. SMITH IN SUPPORT THEREOF** |
| | Emergency Hearing on Interim Approval:<br>Date:   June 3, 2015<br>Time:  10:00 a.m.<br>Place:  Courtroom 5C<br>        United States  Bankruptcy Court<br>        411 West 4th Street, Santa Ana, CA 92701 |
| | Final Hearing:<br>Date:   TBD<br>Time:   TBD<br>Place:  TBD |

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE INTERNAL REVENUE SERVICE, CERTAIN CREDITORS AND PARTIES IN INTEREST:**

PLEASE TAKE NOTICE that John C. Hueston, the Chapter 11 Trustee (the "Chapter 11 Trustee") in the above-captioned bankruptcy case of Morgan Drexen, Inc. (the "Debtor"),

1    seeks interim and final authority to use cash collateral for the period from May 14, 2015 through

2    August 28, 2015 (the "Expiration Date"), including expenses to date since the Chapter 11

3    Trustee's appointment on May 14, 2015.  The Chapter 11 Trustee brings this Motion pursuant to

4    section 363 of the title 11 of the United States Code (the "Bankruptcy Code"); Rule 4001 of the

5    Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules"); and Rule 4001-2 and of the

6    Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of

7    California (the "Local Rules").

8            **PLEASE TAKE FURTHER NOTICE** that the Court has set an emergency hearing for

9    interim approval of the Motion for 10:00 a.m. on June 3, 2015, in Courtroom 5C of the United

10   States Bankruptcy Court, 411 West 4th Street, Santa Ana, CA 92701.

11           **PLEASE TAKE FURTHER NOTICE** that the Debtor is a for-profit corporation that

12   provides back office support and paraprofessional services for attorneys and law firms, but that

13   has been described by federal and state regulators as engaging solely in debt relief services.  The

14   Debtor has one purported secured creditor – the Internal Revenue Service (the "IRS").  The

15   Chapter 11 Trustee is informed that the IRS asserts a lien upon the Debtor's "cash collateral," as

16   that term is defined in section 363(a) of the Bankruptcy Code, on account of a tax lien recorded

17   against the Debtor in February 2015.

18           **PLEASE TAKE FURTHER NOTICE** that interim relief is sought to meet the Debtor's

19   imminent payroll obligations on June 5, 2015 in the amount of approximately $101,000, as well

20   as certain other critical operating expenses, for the period prior to the hearing on final approval of

21   this Motion.  Final relief is sought to meet further ongoing payroll obligations and to pay the

22   estate's ordinary operating expenses as well as the ongoing costs of administering the bankruptcy

23   estate, including payment of professional fees, through the Expiration Date.

24           **PLEASE TAKE FURTHER NOTICE** that, notwithstanding the Expiration Date, the

25   Chapter 11 Trustee may extend the term of the cash collateral order by written agreement with the

26   IRS on the same essential terms as set forth in the order approving this Motion without further

27   order of the Court or a hearing.  If no agreement is reached and the Chapter 11 Trustee wishes to

28   use cash collateral beyond the Expiration Date, the Chapter 11 Trustee will file another motion.

**PLEASE TAKE FURTHER NOTICE** that the Chapter 11 Trustee believes that the IRS lien is adequately protected by the proposed use of cash collateral in accordance with the Budget attached to the Motion.  However, to the extent required by the Court, the Chapter 11 Trustee proposes to provide adequate protection to the IRS by making monthly adequate protection payments of $5,000 per month and granting the IRS a replacement lien in all of the Debtor's post-petition accounts and receivables, pursuant to sections 361(1) and (2) of the Bankruptcy Code, to the extent of any demonstrable diminution to the IRS'S collateral and subject to the Chapter 11 Trustee's ability to use cash collateral as proposed herein.  The relief sought by this Motion does not include the provisions identified in Local Rule 4001-2(b)(1) through (7).

**PLEASE TAKE FURTHER NOTICE** that the Motion is based upon the attached Memorandum of Points and Authorities, the attached Declarations of Evan C. Borges (the "Borges Declaration") and Brad W. Smith (the "Smith Declaration"), and such other and further argument, representations and evidence as may be properly submitted to the Court prior to its decision on the Motion.

**WHEREFORE,** the Chapter 11 Trustee respectfully requests that this Court:

(1) enter an interim order (the "Proposed Interim Order") in the form attached as **Exhibit 2** to the Borges Declaration:  (a) authorizing the Chapter 11 Trustee to use cash collateral on an interim basis in accordance with the budget (the "Budget") attached as **Exhibit 1** to the Smith Declaration, as more fully described in the Proposed Interim Order and the Memorandum of Points and Authorities; and (b) setting a final hearing on the Motion;

(2) enter a final order (the "Proposed Final Order") in the form attached as **Exhibit 3** to the Borges Declaration authorizing the Chapter 11 Trustee to use cash collateral through the Expiration Date in accordance with the Budget, as more fully described in the Proposed Final Order and the Memorandum of Points and Authorities; and

///

///

///

///

(3) granting such other and further relief as the Court may deem just and proper.

Dated: June 2, 2015

Respectfully submitted,

GREENBERG GROSS LLP

By: ___/s/ Michael P. McMahon_____
    Evan C. Borges
    Michael P. McMahon

*Proposed General Bankruptcy Counsel for*
*Chapter 11 Trustee John C. Hueston*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## JURISDICTION

The Court has jurisdiction over this Motion under sections 157 and 1334 of title 28 of the United States Code.  This matter is a core proceeding within the meaning of section 28 U.S.C. § 157(b)(2).  Venue of this case and this Motion is proper under 28 U.S.C. §§ 1408 and 1409.

## II.

## BASIS FOR EMERGENCY INTERIM RELIEF

John C. Hueston, as the chapter 11 trustee (the "Chapter 11 Trustee") in the above-captioned bankruptcy case of Morgan Drexen, Inc. (the "Debtor"), seeks emergency interim authorization to use "cash collateral," as that term is defined in section 363(a) of title 11 of the United States Code (the "Bankruptcy Code"), to prevent immediate and irreparable harm to the Debtor's estate.  The Debtor is required to meet payroll obligations under California law on June 5, 2015 in the amount of approximately $101,000, as well as pay critical operating expenses prior to the hearing on final approval of this Motion.  If these obligations are not met, employees will not receive their paychecks, the estate could face penalties under state law, and the estate will be unable to meet its post-petition obligations.

In addition, the Chapter 11 Trustee has been approached by a potential buyer of certain assets of the Debtor's business.  The potential buyer has stated that it does not intend to continue any aspects of the Debtor's business practices which have been challenged by federal and state regulators.  Based on this expression of interest, the Chapter 11 Trustee believes that it is in the best interests of the estate to investigate the possibility of effectuating a transaction that not only would address the regulating authorities' concerns, but that would bring value to the estate and creditors (including consumers).  At this time, it appears that a sale may be the best means to return value to creditors in this case in the near term.  If, however, the Debtor is unable to continue operations, any such sale transaction could be in jeopardy.  Thus, continued operation of the business is important to maximizing value through a potential sale.

1      Accordingly, to avoid immediate and irreparable harm and preserve the estate's ability to

2   maximize the value of its assets for the benefit of creditors, the Court may grant the Chapter 11

3   Trustee interim relief, pending a final hearing on the Motion, pursuant to section 363(c), Rule

4   4001(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 4001-

5   2(e) of the Local Rules of the United States Bankruptcy Court for the Central District of

6   California (the "<u>Local Rules</u>").

7                                                **III.**

8   <u>**ESSENTIAL TERMS AND REQUIRED DISCLOSURE UNDER LOCAL RULE 4001-2(b)**</u>

9      As noted above, the Chapter 11 Trustee seeks interim relief to meet pressing operating

10   obligations and payroll obligations under California law that are due on June 5, 2015 in the

11   amount of approximately $101,000.

12      In addition, the Chapter 11 Trustee seeks final approval to use cash collateral for the

13   period from May 14, 2015 through August 28, 2015 (the <u>Expiration Date</u>"), including expenses to

14   date since the Chapter 11 Trustee's appointment on May 14, 2015, to pay further ongoing payroll

15   obligations, other ordinary business operating expenses, and the costs of administering the

16   bankruptcy estate, including paying professional fees, pursuant to the terms of the budget (the

17   "<u>Budget</u>") attached as **Exhibit 1** to the Declaration of Brad W. Smith (the "<u>Smith Declaration</u>"),

18   subject to a 20% variance overall.

19      The Chapter 11 Trustee believes the utilization of cash collateral in accordance with the

20   Budget (which reflects significantly reduced expenses resulting in a positive cash flow position

21   since the Chapter 11 Trustee's appointment) provides the Internal Revenue Service (the "<u>IRS</u>")

22   (the Debtor's only purportedly secured creditor) with adequate protection of any purported

23   interest in the cash collateral.  In addition, to the extent required by the Court, the Chapter 11

24   Trustee proposes to make monthly adequate protection payments of $5,000 and to grant to the

25   IRS, to the extent of any demonstrable diminution in value of the IRS'S collateral, replacement

26   liens on all of the Debtor's post-petition accounts and receivables.

27      The relief sought by this Motion does not include any of the provisions listed in Local

28   Rule 4001-2(b)(1) through (7).

**IV.**

**STATEMENT OF FACTS**

A.    **Background**

Founded in 2007 by Walter Ledda ("Ledda"), the Debtor is a for-profit corporation that provides back office support and paraprofessional services for attorneys and law firms, but that has been described by federal and state regulators as engaging solely in debt relief services and improperly charging consumers up-front fees, without any bona fide attorney component or involvement.  In 2012, a Colorado state court found that the Debtor's business model was permissible under state law.[1]  However, in 2013 and 2014, two other state courts, in Wisconsin and West Virginia, found that the Debtor's business model was not permitted by their respective state laws.[2]  Moreover, the Debtor is named as a defendant in pending litigation matters, including adversary proceedings filed by the Office of the United States Trustee in other jurisdictions.[3]

The Chapter 11 Trustee (who was appointed on May 14, 2015, and accepted the appointment shortly thereafter), along with his proposed outside professionals, has been engaged in this matter for approximately two weeks.  The Trustee has been addressing exigent matters related to pre-petition asset transfers (discussed below), securing bank accounts, securing and copying the Debtor's electronic and paper business records, suspending or terminating certain

---

[1] *See* Order of the District Court, Denver County, State of Colorado, entered on September 12, 2012, by Judge Michael A. Martinez, in the case captioned *Donald Drew Moore, et al. v. John W. Suthers, in his Capacity as Attorney General of the State of Colorado*, Case No. 11-CV-7027.  On May 26, 2015, the Colorado Supreme Court overruled the decision of the trial court.  Accordingly, the Chapter 11 Trustee has directed that the Debtor suspend all advertising and enrollment of new consumers in that State.

[2] First, on April 25, 2013, the Wisconsin Department of Financial Institutions made detailed findings and ordered the Debtor to pay over $6 million for violations of Wisconsin state law.  *See* https://www.wdfi.org/_resources/indexed/site/newsroom/admin_orders/lfs_2013/MorganDrexen Order.pdf .  Second, on July 15, 2014, a West Virginia court ordered the Debtor to pay a penalty of $8.575 million for violations of West Virginia state law.  *See* https://getoutofdebt.org/wp-content/uploads/2014/07/State-v.-Morgan-Drexen-Final-Order-Q0042881xD6D48.pdf.

[3] *See Gebhardt v. Figueredo & Boutsis, P.A., et al.*, Case No. 9:13-mp-00009-FMD (Bankr. M.D. Fla.).

- 3 -

1   members of management as well as non-essential employees, and reviewing and approving

2   critical disbursements (including payrolls due under the California Labor Code).  In addition, the

3   Chapter 11 Trustee has been engaged in an intensive investigation of the Debtor's operations as

4   well as discussions with the potential buyer, among other exigent tasks.

5   **B.**    **The Consumer Financial Protection Bureau Litigation**

6           On August 20, 2013, the Consumer Financial Protection Bureau ("CFPB") filed a

7   complaint against the Debtor and Ledda in the United States District Court for the Central District

8   of California (Case No. 8:13-cv-01267-JLS-JEM) (the "CFPB Action").  The CFPB alleges

9   (among other things) that the Debtor's business involved charging up-front fees for debt relief

10  services in violation of the Telemarketing Sales Rule ("TSR"), notwithstanding (i) the

11  inapplicability of the TSR to attorneys, and (ii) the Debtor's assertions of bona fide attorney

12  involvement and attorney-client relationships with the consumers in question.  The CFPB also

13  alleges that certain aspects of the Debtor's marketing to consumers were false and misleading in

14  violation of the Consumer Financial Protection Act of 2010 [DC Docket No. 1[4]].  The CFPB

15  sought, *inter alia*, disgorgement, restitution, civil penalties, and a permanent injunction.

16          On November 25, 2014, the District Court denied the CFPB's motion for summary

17  judgment, finding, among other things, genuine disputes of material fact regarding the nature of

18  bankruptcy services allegedly provided by the Debtor under the supervision of attorneys with

19  attorney-client relationships with consumers.  [DC Docket No. 198].

20          However, on April 21, 2015, the District Court granted terminating sanctions against the

21  Debtor, based on findings that the Debtor, in order to defeat summary judgment, had allegedly

22  falsified evidence.  [DC Docket No. 284].  The District Court also ordered further briefing

23  (completed May 22, 2015) on whether to impose similar sanctions against Ledda personally.  *Id*.

24          On April 30, 2015, the District Court ordered a temporary freeze of the Debtor's assets

25  pending resolution of the CFPB Action (the "Freeze Order") [DC Docket No. 289].  In addition,

26

27  _____

28  [4] References to the District Court's docket in the CFPB Case are indicated by "[DC Docket No.
    X]."

1   while the CFPB has requested a permanent injunction as to the Debtor's operations (or aspects of

2   them), no injunction has been entered to date.

3   **C.     The Chapter 7 Case and Adversary Proceeding**

4          On April 30, 2015, the day the District Court entered the Freeze Order, the Debtor filed a

5   chapter 7 petition.  Jeffrey I. Golden ("Golden") was appointed chapter 7 trustee.  Along with its

6   petition, the Debtor disclosed that from October to December 2014, it had transferred

7   substantially all its assets to third party entities under the control of insiders (the "Transferee

8   Entities"), in exchange for alleged consideration in the form of promissory notes.[5]  [BK Docket

9   No. 1[6]].

10         On May 8, 2015, Golden commenced an adversary proceeding (the "Adversary

11  Proceeding") against the Transferee Entities, among others, seeking to recover the transferred

12  assets and to appoint a receiver over the Transferee Entities.  [BK Docket No. 9, Adv. Docket No.

13  1[7]].Golden also filed an emergency motion for appointment of the receiver [Adv. Docket No. 3].

14         At the hearing on the emergency motion on May 11, 2015, Golden announced that a

15  settlement had been reached with Defendants that involved:  (i) entry of a stipulated judgment for

16  turnover of the transferred assets; (ii) dismissal without prejudice of the request for appointment

17  of a receiver; and (iii) conversion of the bankruptcy case to chapter 11 and appointment of a

18  chapter 11 trustee.  In conjunction with the settlement, on May 11, 2015, Golden filed a motion to

19  convert the bankruptcy case to chapter 11 and to appoint a chapter 11 trustee [BK Docket No.

20  11].

21  **D.     Conversion to Chapter 11 and Appointment of the Chapter 11 Trustee**

22         On May 14, 2015, the Court entered the stipulated judgment in the Adversary Case [Adv.

23  Docket No. 15] and granted the motion to convert the bankruptcy case and appoint a chapter 11

24  trustee [BK Docket No. 18].  Also on May 14, 2015, the Office of the United States Trustee

25

26  [5] As noted above, shortly before the transfers, on July 15, 2014, the West Virginia court had
    ordered the Debtor to pay a penalty of $8.75 million.

27  [6] References to the Bankruptcy Court docket are indicated by "[BK Docket No. X]."

28  [7] References to the Adversary Case docket are indicated by "[Adv. Docket No. X]."

("U.S. Trustee") appointed John C. Hueston as chapter 11 trustee [BK Docket No. 16], which the

Court approved [BK Docket No. 19].  Mr. Hueston accepted the position of chapter 11 trustee on

May 15, 2015 and filed his acceptance with the Court on May 18, 2015 [BK Docket No. 23].  To

date, no committee has been appointed under section 1102 of the Bankruptcy Code.

**E.    Administration of the Estate by the Chapter 11 Trustee**

The Chapter 11 Trustee, along with his proposed outside professionals, has been engaged

in this matter for approximately two weeks.  The Chapter 11 Trustee has been addressing exigent

matters related to pre-petition asset transfers, securing bank accounts, securing the Debtor's

electronic and paper business records, suspending or terminating certain members of management

as well as non-essential employees, and reviewing and approving critical disbursements

(including payroll due under the California Labor Code).  In addition, the Chapter 11 Trustee has

been engaged in an intensive investigation of the Debtor's operations and in discussions with the

potential buyer, among other exigent tasks.

**F.    Preserving the Chapter 11 Trustee's Ability to Pursue a Potential Sale With an
Acceptable Buyer**

The Chapter 11 Trustee has been approached by a potential buyer of certain assets of the

Debtor's business.  The potential buyer has stated that it does not intend to continue any aspects

of the Debtor's business practices which have been challenged by federal and state regulators.

Based on this expression of interest, the Chapter 11 Trustee believes that it is in the best interests

of the estate to investigate the possibility of effectuating a transaction that not only would address

the regulating authorities' concerns, but that would bring value to the estate and creditors

(including consumers).  At this time, it appears that a sale may be the best means to return value

to creditors in this case in the near term.  If, however, the Debtor is unable to continue operations,

any such sale transaction could be in jeopardy.  Thus, continued operation of the business is

important to maximizing value through a potential sale.

**G.    The Purported IRS Lien**

In its chapter 7 petition, the Debtor listed two debts owed to the IRS – a $300,325.19

claim for 2013 taxes (the "2013 Tax Claim") and a $966,172.32 claim for 2014 taxes (the "2014

1    Tax Claim"). The Debtor listed these IRS debts as priority unsecured debts on Schedule E. The

2    only secured creditor listed on Schedule D by the Debtor was the Irvine Company (with a claim

3    of $0.00). However, a subsequent search of filings recorded against the Debtor disclosed a

4    purported tax lien (the "IRS Lien") filed by the IRS on February 11, 2015.

5         As detailed in the Declaration of Evan C. Borges (the "Borges Declaration"), on May 28,

6    2015, Evan C. Borges ("Borges"), as proposed general bankruptcy counsel for the Chapter 11

7    Trustee, contacted Sabina Makarov ("Makarov"), the contact person at the IRS provided by the

8    U.S. Trustee. Makarov informed Borges that, based on a preliminary review, it appeared the IRS

9    had secured only the roughly $300,000 2013 Tax Claim, but not the larger purported 2014 Tax

10   Claim. Makarov stated that she would need to confer with IRS counsel.

11        On June 1, 2015, the IRS filed a proof of claim (the "IRS POC"). Consistent with

12   Makarov's statements, the IRS POC includes a secured claim in the amount of $283,464.63 over

13   "[a]ll of debtor['s] right, title and interest to property [pursuant to] 26 U.S.C. § 6321;" a priority

14   unsecured claim in the amount of $1,668,189.91; and a general unsecured claim in the amount of

15   $16,504.89. A copy of the IRS POC is attached as **Exhibit 1** to the Borges Declaration.

16        Without admitting the accuracy or validity of the IRS POC or its secured status, for

17   purposes of this Motion, the Chapter 11 Trustee assumes *arguendo* that the IRS holds a secured

18   claim in the amount of $283,464.63.

19   **H.      The May 28, 2015 Emergency Motion**

20        On May 28, 2015, the Chapter 11 Trustee filed an *Emergency Motion and Ex Parte*

21   *Application For: (1) Order Clarifying Scope of Automatic Stay and Whether District Court Or*

22   *Bankruptcy Court Will Oversee Approval Of Disbursements And Budgets For Chapter 11 Debtor*

23   *Morgan Drexen, Inc.; and (2) Order Approving Chapter 11 Trustee Disbursements And Cash*

24   *Budget Provided To CFPB For Period May 1, 2015 Through June 19, 2015, Pending Further*

25   *Application* [Docket No. 43] (the "Emergency Motion"). That same day, the Court held an

26   emergency hearing on the Emergency Motion. At the hearing, the Court ruled that: (1) all issues

27   relating to the Debtor's budget, cash flows, and distributions from the estate shall be determined

28   by the Bankruptcy Court, not the District Court; and (2) the Chapter 11 Trustee was permitted to

1  distribute up to $20,000 on May 29, 2015 to cover the Debtor's payroll expenses for the period

2  prior to May 29, 2015.  The Court indicated, however, that the Chapter 11 Trustee would need to

3  bring a motion for authority to use cash collateral before making any further use of the estate's

4  funds, prompting the filing of the instant Motion.

5  **I.      The Debtor's Cash Flow and Cash Balance**

6          Since taking over the Debtor's operations, the Chapter 11 Trustee has substantially

7  reduced the Debtor's expenses, resulting in a positive cash flow of over $368,000 from May 15,

8  2015 to May 19, 2015 – prior to payment of fees for chapter 11 professionals.  As of May 29,

9  2015, the Debtor had a cash balance in the amount of $372,993.  The projected cash balance as of

10  August 28, 2015 is expected to be in the amount of $226,632 (after payment of certain estimated

11  professional fees).  In order to operate the business for the benefit of creditors, including the IRS,

12  the Chapter 11 Trustee must be authorized to utilize this cash in accordance with the Budget.

13                                                   **V.**

14                                            **DISCUSSION**

15  **A.      The Chapter 11 Trustee Should Be Authorized to Use Cash Collateral to Operate,
16          Maintain and Preserve the Debtor's Business.**

17          The Chapter 11 Trustee's use of property of the estate is governed by section 363 of the

18  Bankruptcy Code.  Section 363(c)(1) provides in pertinent part:

19                  If the business of the debtor is authorized to be operated under section.
20                  . .1108. . . of this title and unless the court orders otherwise, the trustee
                    may enter into transactions, including the sale or lease of property of
21                  the estate, in the ordinary course of business, without notice or a
                    hearing, and may use property of the estate in the ordinary course of
22                  business without notice or a hearing.

23  11 U.S.C. § 363(c)(1).

24          Section 362(c)(2), however, establishes a special requirement with respect to "cash

25  collateral," which is defined in section 363(a) as "cash, negotiable instruments, documents of

26  title, securities, deposit accounts or other cash equivalents in which the estate and an entity other

27  than the estate have an interest. . . ."  11 U.S.C. § 363(a).  Section 363(c)(2) provides that a

28  trustee may use cash collateral under subsection (c)(1) if: "(A) each entity that has an interest in

1    such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale

2    or lease in accordance with the provisions of this section." 11 U. S.C. § 363(c)(2).

3        It is well settled that it is appropriate for a chapter 11 trustee or debtor in possession[8] to

4    use cash collateral for the purpose of maintaining and operating the Debtor's business and estate

5    property.  11 U.S.C. § 363(c)(2)(B); *In re Oak Glen R-Vee*, 8 B.R. 213, 216 (Bankr. C.D. Cal.

6    1981); *In re Tucson Industrial Partners*, 129 B.R. 614 (B.A.P. 9th Cir. 1991).  In addition, as in

7    the case at hand, use of cash collateral is often critical to maintain the value of a debtor's business

8    and facilitate the goal of maximizing the return to creditors.  *See In re Feiler*, 218 F.3d 948, 952

9    (9th Cir. 2000)  ("[T]he trustee's duty is to maximize the assets of the bankruptcy estate to allow

10   maximum recovery for the debtor's creditors.").

11       Here, the only substantial source of revenue available to the Chapter 11 Trustee to operate

12   the Debtor's business is the revenue generated from its business operations.  As a result, the

13   Chapter 11 Trustee has virtually no ability to continue to operate the Debtor's business and

14   maintain the going concern value of its business unless the Chapter 11 Trustee has immediate

15   access to and use of the Debtor's cash collateral to pay the Debtor's ordinary operating expenses

16   and costs of administering the estate.  The inability of the Chapter 11 Trustee to use the cash

17   collateral likely would result in the immediate cessation of the Debtor's operations and put an end

18   to any potential sale of assets, to the detriment of all the Debtor's creditors, including the IRS.

19   Therefore, the Court should grant the Motion and authorize the Chapter 11 Trustee to use cash

20   collateral to operate, maintain and preserve the Debtor's business.

21       Further, approving the spending in the retrospective portion of the Budget is appropriate

22   given that the Chapter 11 Trustee only recently learned of the IRS Lien and has, in any event,

23   reduced costs to a minimum and generated positive cash flow.  Had the Chapter 11 Trustee not

24   used any of the Debtor's cash since his appointment on May 14, 2015, the Debtor's business

25   operations would have ceased to the detriment of the estate (and the IRS).

26

27   _____

28   [8] For purposes of section 363, chapter 11 trustees are treated identically as debtors in possession.
*See* 11 U.S.C. § 1107(a).

- 9 -

**B.       The IRS Is Adequately Protected.**

In pertinent part, section 363(e) of the Bankruptcy Code provides:

Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest . . . .

11 U.S.C. § 363(e).  Although "adequate protection" is not defined in the Bankruptcy Code,

section 361 provides illustrative examples of adequate protection, specifically that the trustee may

give (1) cash, (2) additional or replacement liens, or (3) other relief that will result in the

indubitable equivalent of the objecting party's interest in such property.  11 U.S.C. § 361.  The

test is whether the secured party's interest is protected from diminution or decrease as a result of

the proposed use of cash collateral.  *See In re Gasel Tranp. Lines, Inc.,* 326 B.R. 683 (B.A.P. 6th

Cir. 2005).

As noted above, after the Chapter 11 Trustee's significant cuts to operating expenses, the

Debtor is operating cash-flow positive (prior to payment of professional fees associated with

administering the chapter 11 case), as illustrated by the Budget.  This alone could be sufficient to

establish that the IRS is adequately protected.  *See In re Carbone Companies, Inc.,* 395 B.R. 631,

636-37 (Bankr. N.D. Ohio 2008).  Moreover, to the extent required by the Court, the Chapter 11

Trustee proposes additional adequate protection pursuant to sections 361(1) and (2) by making

monthly adequate protection payments of $5,000 and granting the IRS a replacement lien in all of

the Debtor's post-petition accounts and receivables to the extent of any demonstrable diminution

of the IRS'Ss collateral.

**C.       The Debtor Has Satisfied the Procedural Requirements for Cash Collateral Motions.**

Pursuant to Bankruptcy Rule 4001(b)(1)(B), a motion for use of cash collateral must

include:

a concise statement of the relief requested, not to exceed five pages, that lists or summarizes, and sets out the location within the relevant documents of, all material provisions, including:
    (i) the name of each entity with an interest in the cash collateral;
    (ii) the purposes for the use of the cash collateral;
    (iii) the material terms, including duration, of the use of the cash collateral; and

(iv) any liens, cash payments, or other adequate protection that will be provided to each entity with an interest in the cash collateral or, if no additional adequate protection is proposed, an explanation of why each entity's interest is adequately protected.

Fed. R. Bankr. P. 4001(b)(1)(B). Similarly, Local Rule 4001-2(c) provides that a cash collateral motion "must include a summary of the essential terms of the . . . use of cash collateral . . . ." Local Bankr. R. 4001-2(c). The Notice and Motion and Parts I through III of this Memorandum meet these requirements.

In addition, Local Rule 4001-2(b) provides that the cash collateral motion "must identify whether the proposed form of order . . . contains any provision that" falls under seven listed categories.[9] As explained in the Notice and Motion and Part III of this Memorandum, the proposed cash collateral orders sought by this Motion contain none of the provisions specified in Local Rule 4001-2(b)(1) through (7).

---

[9] The seven categories are:

(1) Grants cross-collateralization protection (other than replacement liens or other adequate protection) to the prepetition secured creditors (i.e., clauses that secure prepetition debt by postpetition assets in which the secured creditor would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law);

(2) Binds the estate or all parties in interest with respect to the validity, perfection, or amount of the secured creditor's prepetition lien or debt or the waiver of claims against the secured creditor;

(3) Waives or limits the estate's rights under 11 U.S.C. § 506(c);

(4) Grants to the prepetition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, or 549;

(5) Deems prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in 11 U.S.C. § 552(b);

(6) Provides disparate treatment for the professionals retained by a creditors' committee from that provided for the professionals retained by the debtor with respect to a professional fee carve out; or

(7) Primes any secured lien. If an order is sought to prime a lien, the Financing Motion must:

(A) Identify the location of any such provision in the proposed form of order, cash collateral stipulation, and/or loan agreement; and

(B) Contain specific justification for the priming of the lien.

Local Bankr. R. 4001-2(b).

**D.    Service is Proper.**

Pursuant to Bankruptcy Rule 4001(b)(1)(C), the Chapter 11 Trustee is serving this Motion on (1) any entity with an interest in the cash collateral; and (2) because no committee has been appointed in this case, the twenty largest unsecured creditors.  The Chapter 11 Trustee is also serving the Motion on the U.S. Trustee, the CFPB, and other parties who have requested notice.

**VI.**

**CONCLUSION**

Based on the foregoing, the Chapter 11 Trustee submits that approval by this Court of the Motion is in the best interests of the Debtor's estate and respectfully requests that the Court:

(1) enter an interim order (the "Proposed Interim Order") in the form attached as **Exhibit 2** to the Borges Declaration:  (a) authorizing the Chapter 11 Trustee to use cash collateral on an interim basis in accordance with the budget (the "Budget") attached as **Exhibit 1** to the Smith Declaration, as more fully described in the Proposed Interim Order and the Memorandum of Points and Authorities; and (b) setting a final hearing on the Motion;

(2) enter a final order (the "Proposed Final Order") in the form attached as **Exhibit 3** to the Borges Declaration authorizing the Chapter 11 Trustee to use cash collateral through the Expiration Date in accordance with the Budget, as more fully described in the Proposed Final Order and the Memorandum of Points and Authorities; and

(3) granting such other and further relief as the Court deems just and proper.

Dated: June 2, 2015                              Respectfully submitted,

                                                 GREENBERG GROSS LLP

                                                 By:    /s/ Michael P. McMahon
                                                        Evan C. Borges
                                                        Michael P. McMahon

                                                 *Proposed General Bankruptcy Counsel for*
                                                 *Chapter 11 Trustee John C. Hueston*

## <u>DECLARATION OF EVAN C. BORGES</u>

I, Evan C. Borges, hereby declare as follows:

1.       I am a partner of Greenberg Gross LLP, proposed general bankruptcy counsel to John C. Hueston as chapter 11 trustee (the "<u>Chapter 11 Trustee</u>") in the above-captioned bankruptcy case of Morgan Drexen, Inc. (the "<u>Debtor</u>"), and a member in good standing of the State Bar of California.  I also am admitted to practice before this Court.

2.       I submit this Declaration in support of the *Emergency Motion of Chapter 11 Trustee for Interim and Final Approval of the Use Cash Collateral for the Period from May 14, 2015 Through August 28, 2015*.

3.       The Chapter 11 Trustee seeks emergency interim authorization to use "cash collateral," as that term is defined in section 363(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), to prevent immediate and irreparable harm to the Debtor's estate.    The Debtor is required to meet payroll obligations under California law on June 5, 2015 in the amount of approximately $101,000, as well as pay critical operating expenses prior to the hearing on final approval of this Motion.  If these obligations are not met, employees will not receive their paychecks, the estate could face penalties under state law, and the estate will be unable to meet its post-petition obligations.

4.       The Chapter 11 Trustee has been approached by a potential buyer of certain assets of the Debtor's business.  The potential buyer has stated that it does not intend to continue any aspects of the Debtor's business practices which have been challenged by federal and state regulators.  Based on this expression of interest, the Chapter 11 Trustee believes that it is in the best interests of the estate to investigate the possibility of effectuating a transaction that not only would address the regulating authorities' concerns, but that would bring value to the estate and creditors (including consumers).  At this time, it appears that a sale may be the best means to return value to creditors in this case in the near term.  If, however, the Debtor is unable to continue operations, any such sale transaction could be in jeopardy.  Thus, continued operation of the business is important to maximizing value through a potential sale.

5.       In its chapter 7 petition, the Debtor listed two debts owed to the IRS – a

$300,325.19 claim for 2013 taxes (the "2013 Tax Claim") and a $966,172.32 claim for 2014 taxes

(the "2014 Tax Claim").  The Debtor listed these IRS debts as priority unsecured debts on

Schedule E.  The only secured creditor listed on Schedule D by the Debtor was the Irvine

Company (with a claim of $0.00).  However, a subsequent search of filings recorded against the

Debtor disclosed a purported tax lien (the "IRS Lien") filed by the IRS on February 11, 2015.

6.    On May 28, 2015, I contacted Sabina Makarov ("Ms. Makarov"), the contact

person at the IRS provided to me by the U.S. Trustee, to advise her of the Emergency Motion we

were about to file that day.  Ms. Makarov stated that, based on a preliminary review, it appeared

the IRS had secured only the roughly $300,000 2013 Tax Claim, but not the larger purported

2014 Tax Claim.  Ms. Makarov also stated that she would need to confer with IRS counsel.

7.    On June 1, 2015, the IRS filed a proof of claim (the "IRS POC").  Consistent with

Ms. Makarov's statements, the IRS POC includes a secured claim in the amount of $283,464.63

over "[a]ll of debtor['s] right, title and interest to property [pursuant to] 26 U.S.C. § 6321;" a

priority unsecured claim in the amount of $1,668,189.91; and a general unsecured claim in the

amount of $16,504.89.  Attached as **Exhibit 1** hereto is a true and correct copy of the IRS POC.

8.    On May 28, 2015, the Chapter 11 Trustee filed an *Emergency Motion and Ex*

*Parte Application For: (1) Order Clarifying Scope of Automatic Stay and Whether District Court*

*Or Bankruptcy Court Will Oversee Approval Of Disbursements And Budgets For Chapter 11*

*Debtor Morgan Drexen, Inc.; and (2) Order Approving Chapter 11 Trustee Disbursements And*

*Cash Budget Provided To CFPB For Period May 1, 2015 Through June 19, 2015, Pending*

*Further Application* [Docket No. 43] (the May 28, 2015 Emergency Motion").  That same day,

the Court held an emergency hearing on the May 28, 2015 Emergency Motion.  At the hearing,

the Court ruled that:  (1) all issues relating to the Debtor's budget, cash flows, and distributions

from the estate shall be determined by the Bankruptcy Court, not the District Court; and (2) the

Chapter 11 Trustee was permitted to distribute up to $20,000 on May 29, 2015 to cover the

Debtor's payroll expenses for the period prior to May 29, 2015.  The Court stated, however, that

the Chapter 11 Trustee would need to bring a motion for authority to use cash collateral before

making any further use of the estate's funds, prompting the filing of the instant Motion.

9.      Attached as **Exhibit 2** hereto is a true and correct copy of the Chapter 11 Trustee's proposed *Order Granting Approval of the Use of Cash Collateral on an Interim Basis Pending a Final Hearing on the Motion*.

10.     Attached as **Exhibit 3** hereto is a true and correct copy of the Chapter 11 Trustee's proposed *Order Granting Final Approval of the Use of Cash Collateral Through August 28, 2015*.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 2nd day of June 2015, at Costa Mesa, California.

Evan C. Borges

- 3 -

1

2

**EXHIBIT 1**

3

(Proof of Claim)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT CENTRAL    DISTRICT OF CALIFORNIA | PROOF OF CLAIM |
|---|---|

| | |
|---|---|
| Name of Debtor:<br><br>MORGAN DREXEN INC | Case Number:<br><br>8:15-BK-12278-CB |

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br><br>Department of the Treasury - Internal Revenue Service | **COURT USE ONLY** |
| Name and address where notices should be sent:<br><br>Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA  19101-7346<br><br>Telephone number: 1-800-973-0424    email:    Creditor Number: 36242715 | ☐ Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number:_____**<br>*(If known)*<br><br>Filed on: _____ |
| Name and address where payment should be sent (if different from above):<br><br>Internal Revenue Service<br>Insolvency Group 3<br>1301 Clay St, M/S 1400S<br>Oakland, CA  94612<br><br>Telephone Number: (510) 637-1202    email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:**    $ 1,968,159.43

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

■ Check this box if the claim includes interest or other charges in addition to the principal amount of claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** _____Taxes_____
   (See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:**<br><br>_____See Attachment__ | **3a. Debtor may have scheduled account as:**<br><br>_____<br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br><br>_____<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Amount of arrearage and other charges. as of the time case filed, included in secured claim, if any:**

$ 283,464.63

**Nature of property or right of setoff:**  ■ Real Estate  ■ Motor Vehicle  ■ Other
**Describe:**   *All of debtor(s) right, title and interest to property - 26 U.S.C. §6321*

**Basis for perfection:** _____See Attachment_____

**Value of Property:**$_____

**Amount of Secured Claim:** $ 283,464.63

**Annual Interest Rate** _3_%     ☐ fixed   or   ■ variable
**(when case was filed)**

**Amount Unsecured:** $ 16,504.89

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).  If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan -11 U.S.C. §507 (a)(5).

Amount entitled to priority:
$ 1,668,189.91

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

■ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.  (See instruction #6)

B10 (Official Form 10) (4/13)                                                                                                                    2

---

**7. Documents:** Attach are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A).  If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached.  If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (*See instruction #7, and the definition of  "redacted".*)

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:**  (See instruction #8)

Check the appropriate box.

■ I am the creditor.          ☐ I am the creditor's authorized agent.          ☐ I am the trustee, or the debtor,          ☐ I am a guarantor, surety, indorsor, or other codebtor.
                                                                               or their authorized agent.          (See Bankruptcy Rule 3005.)
                                                                               (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print name: SABINA MAKAROV
Title:        Supv Revenue Officer
Company:   Internal Revenue Service                              /s/ SABINA MAKAROV                                 05/29/2015
                                                                 (Signature)                                        (Date)

Address and telephone number (if different from notice address above):
Internal Revenue Service
Insolvency Group 3
1301 Clay St, M/S 1400S
Oakland, CA  94612

Telephone number:  (510) 637-1202                    Email:

---

*Penalty for presenting fraudulent claim:*  Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571.

# Proof of Claim for Internal Revenue Taxes

Department of the Treasury/Internal Revenue Service

**Form 10**
Attachment

**In the Matter of:** MORGAN DREXEN INC
675 ANTON BLVD
COSTA MESA, CA 92626

**Case Number**
8:15-BK-12278-CB

**Type of Bankruptcy Case**
CHAPTER 11

**Date of Petition**
04/30/2015

The United States has not identified a right of setoff or counterclaim. However, this determination is based on available data and is not intended to waive any right to setoff against this claim debts owed to this debtor by this or any other federal agency. All rights of setoff are preserved and will be asserted to the extent lawful.

**Secured Claims**    (Notices of Federal tax lien filed under internal revenue laws before petition date)

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Penalty to Petition Date | Interest to Petition Date | Notice of Tax Lien Filed: Date | Office Location |
|---|---|---|---|---|---|---|---|---|
| XX-XXX4947 | CORP-INC | 12/31/2013 | 10/13/2014 | $240,708.02 | $33,184.84 | $9,571.77 | 02/17/2015 | ORANGE COUNTY |
| | | | | | | | 02/11/2015 | CALIFORNIA |

**Total Amount of Secured Claims:**    **$283,464.63**

**Unsecured Priority Claims**    under section 507(a)(8) of the Bankruptcy Code

| Taxpayer ID Number | Kind of Tax | Tax Period | | Date Tax Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|---|---|
| XX-XXX4947 | CORP-INC | 12/31/2013 | 1 | Pending Examination | $200,000.00 | $0.00 |
| XX-XXX4947 | CORP-INC | 12/31/2014 | | 04/06/2015 | $945,769.00 | $3,582.41 |
| XX-XXX4947 | CORP-INC | 12/31/2014 | 1 | Pending Examination | $200,000.00 | $0.00 |
| XX-XXX4947 | WT-FICA | 06/30/2015 | 2 | NOT FILED | $100.00 | $0.00 |
| XX-XXX4947 | CORP-INC | 12/31/2015 | 3 | Unassessed Liability | $308,346.59 | $0.00 |
| XX-XXX4947 | FUTA | 12/31/2015 | 3 | Unassessed Liability | $10,391.91 | $0.00 |
| | | | | | $1,664,607.50 | $3,582.41 |

**Total Amount of Unsecured Priority Claims:**    **$1,668,189.91**

**Unsecured General Claims**

Penalty to date of petition on unsecured priority claims (including interest thereon) . . . . . . $16,504.89

**Total Amount of Unsecured General Claims:**    **$16,504.89**

1 PROPOSED TAX DEFICIENCY DETERMINED BY EXAMINATION OF DEBTOR(S) TAX RETURN.

2 THE ABOVE LIABILITY HAS BEEN LISTED AS A POTENTIAL LIABILITY FOR THE DEBTOR BECAUSE THE RETURN HAS NOT BEEN FILED. AS SOON AS THE DEBTOR FILES THE RETURN WITH THE IRS AS RE-QUIRED BY LAW THIS CLAIM WILL BE ADJUSTED TO REFLECT THE ASSESSED LIABILITY.

3 THE ABOVE LIABILITY HAS BEEN LISTED AS A POTENTIAL LIABILITY FOR THE DEBTOR DUE TO  DEBTOR'S FAILURE TO MAKE REQUIRED TAX DEPOSITS. AS SOON THE DEBTOR FILES THE RETURN WITH THE IRS AS REQUIRED BY LAW THIS CLAIM WILL BE ADJUSTED AS NECESSARY.

**EXHIBIT 2**

(Proposed Interim Order)

1  Evan C. Borges (State Bar No. 128706)
   *EBorges@GGTrialLaw.com*
2  Michael P. McMahon (State Bar No. 258058)
   *MMcMahon@GGTrialLaw.com*
3  GREENBERG GROSS LLP
4  650 Town Center Drive, Suite 1750
   Costa Mesa, CA 92626
5  Telephone:  (949) 383-2800
   Facsimile:    (949) 383-2801
6
7  *Proposed General Bankruptcy Counsel for*
   *Chapter 11 Trustee John C. Hueston*
8

9          **UNITED STATES BANKRUPTCY COURT**

10         **CENTRAL DISTRICT OF CALIFORNIA**

11              **SANTA ANA DIVISION**

12  In re:                                    Case No. 8:15-bk-12278-CB

13  MORGAN DREXEN, INC., a Nevada             Chapter 11
    corporation,
14                                            **ORDER GRANTING ON AN INTERIM**
                 Debtor.                      **BASIS THE EMERGENCY MOTION OF**
15                                            **CHAPTER 11 TRUSTEE FOR INTERIM**
                                              **AND FINAL APPROVAL OF THE USE OF**
16                                            **CASH COLLATERAL FOR THE PERIOD**
                                              **FROM MAY 14, 2015 THROUGH AUGUST**
17                                            **28, 2015**

18
                                             Emergency Hearing on Interim Approval:
19                                            Date:   June 3, 2015
                                             Time:   10:00 a.m.
20                                            Place:  Courtroom 5C
                                                     United States  Bankruptcy Court
21                                                   411 West 4th Street, Santa Ana, CA 92701
22
                                             Final Hearing:
23                                            Date:   June __, 2015
                                             Time:   __:__ _.m.
24                                            Place:  Courtroom __
                                                     United States  Bankruptcy Court
25                                                   411 West 4th Street, Santa Ana, CA 92701
26

27          Upon the *Emergency Motion of Chapter 11 Trustee for Interim and Final Approval of the*

28  *Use Cash Collateral for the Period from May 14, 2015 Through August 28, 2015* (the "Motion")

filed by John C. Hueston as chapter 11 trustee (the "Chapter 11 Trustee") in the above-captioned

bankruptcy case of Morgan Drexen, Inc. (the "Debtor"); the Court having jurisdiction to consider

the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration

of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §

157(b)(2); venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; it appearing that the

interim relief requested in the Motion is in the best interests of the Debtor's estate, its creditors,

and all other parties in interest; the Chapter 11 Trustee having provided appropriate notice of the

Motion under the circumstances; the Court having considered the Motion and supporting papers,

including the Declarations of Evan C. Borges and Brad W. Smith and the exhibits thereto, any

responses and objections to the Motion, and the arguments of counsel and evidence proffered at

the hearing, if any, on the Motion; and after due deliberation and good cause appearing therefor,

      IT IS HEREBY ORDERED THAT:

      1.     The Motion is granted on an interim basis pending a final hearing, which final

hearing shall be held on June ___, 2015 at __:_ _.m, before this Court (the "Final Hearing").

      2.     The Debtor is hereby authorized to use cash collateral to and through the date set

for the Final Hearing, pursuant to the terms of the Motion and the budget (the "Budget") attached

to the Declaration of Brad W. Smith filed in support of the Motion.  The Debtor shall not deviate

by more than 20% from the total amount of the Budget.

      3.     After the payment of the expenses of preserving, maintaining and operating the

Debtor, any excess income shall be available to the Chapter 11 Trustee to pay the fees and costs

of the professionals of the Debtors' estate, as appropriate, pursuant to the Bankruptcy Code,

Bankruptcy Rules, Local Rules, and any interim payment procedure order of this Court.

      4.     Any opposition to the Motion must be filed with the Court and served on the

Chapter 11 Trustee and its proposed counsel of record, the Office of the United States Trustee,

and the Internal Revenue Service by no later than 4:00 p.m. Pacific Daylight Time on June ___,

2015.

      5.     Any reply to opposition to the Motion must be filed with the Court, with a

conformed copy delivered to chambers and a copy served on the opposing party or parties, the

1 | United States Trustee, and the Internal Revenue Service, by no later than 4:00 p.m. Pacific

2 | Daylight Time on June ___, 2015.

3 |      6.     Upon entry of this Order, counsel for the Debtors shall forward written notice

4 | thereof to the Internal Revenue Service by facsimile and overnight delivery.

5 |      7.     The Court shall retain jurisdiction with respect to any matters, claims, rights or

6 | disputes arising from or related to the implementation of this Order.

7 | ###

**EXHIBIT 3**

(Proposed Final Order)

1  Evan C. Borges (State Bar No. 128706)
   *EBorges@GGTrialLaw.com*
2  Michael P. McMahon (State Bar No. 258058)
   *MMcMahon@GGTrialLaw.com*
3  GREENBERG GROSS LLP
   650 Town Center Drive, Suite 1750
4  Costa Mesa, CA 92626
   Telephone:   (949) 383-2800
5  Facsimile:    (949) 383-2801
6
7  *Proposed General Bankruptcy Counsel for*
   *Chapter 11 Trustee John C. Hueston*
8

9  **UNITED STATES BANKRUPTCY COURT**

10 **CENTRAL DISTRICT OF CALIFORNIA**

11 **SANTA ANA DIVISION**

12 | In re: | Case No. 8:15-bk-12278-CB |

13 MORGAN DREXEN, INC., a Nevada    Chapter 11
   corporation,

14                                  **ORDER GRANTING ON A FINAL BASIS**
              Debtor.               **THE EMERGENCY MOTION OF**
15                                  **CHAPTER 11 TRUSTEE FOR INTERIM**
                                    **AND FINAL APPROVAL OF THE USE OF**
16                                  **CASH COLLATERAL FOR THE PERIOD**
                                    **FROM MAY 14, 2015 THROUGH AUGUST**
17                                  **28, 2015**

18
                                    Emergency Hearing on Interim Approval:
19                                  Date:   June 3, 2015
                                    Time:   10:00 a.m.
20                                  Place:  Courtroom 5C
                                            United States  Bankruptcy Court
21                                          411 West 4th Street, Santa Ana, CA 92701
22
                                    Final Hearing:
23                                  Date:   June __, 2015
                                    Time:   __:__ _.m.
24                                  Place:  Courtroom __
                                            United States  Bankruptcy Court
25                                          411 West 4th Street, Santa Ana, CA 92701
26

27          Upon the *Emergency Motion of Chapter 11 Trustee for Interim and Final Approval of the*

28  *Use Cash Collateral for the Period from May 14, 2015 Through August 28, 2015* (the "Motion")

1    filed by John C. Hueston as chapter 11 trustee (the "Chapter 11 Trustee") in the above-captioned

2    bankruptcy case of Morgan Drexen, Inc. (the "Debtor"); the Court having jurisdiction to consider

3    the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration

4    of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §

5    157(b)(2); venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; it appearing that the final

6    relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and all

7    other parties in interest; the Chapter 11 Trustee having provided appropriate notice of the Motion

8    under the circumstances and no further notice being required; the Court having considered the

9    Motion and supporting papers, including the Declarations of Evan C. Borges and Brad W. Smith

10    and the exhibits thereto, any responses and objections to the Motion, and the arguments of

11    counsel and evidence proffered at the hearing, if any, on the Motion; and after due deliberation

12    and good cause appearing therefor,

13         IT IS HEREBY ORDERED THAT:

14         1.      The Motion is granted.

15         2.      The Debtor is hereby authorized to use cash collateral during the period from the

16    Chapter 11 Trustee's appointment on May 14, 2015, including expenses paid to date, to and

17    through August 28, 2015 (the "Expiration Date"), pursuant to the terms of the Motion and the

18    budget (the "Budget") attached to the Declaration of Brad W. Smith filed in support of the

19    Motion.  The Debtor shall not deviate by more than 20% from the total Budget.

20         3.      After the payment of the expenses of preserving, maintaining and operating the

21    Debtor, any excess income shall be available to the Chapter 11 Trustee to pay the fees and costs

22    of the professionals of the Debtors' estate, as appropriate, pursuant to the Bankruptcy Code,

23    Bankruptcy Rules, Local Rules, and any interim payment procedure order of this Court.

24         4.      The Chapter 11 Trustee and the Internal Revenue Service may extend the terms of

25    this Order beyond the Expiration Date by written agreement.  Otherwise, if the Chapter 11

26    Trustee seeks to use cash collateral beyond the Expiration Date, the Chapter 11 Trustee shall file

27    and serve a renewed motion for approval of use of cash collateral.

28         5.      The Court shall retain jurisdiction with respect to any matters, claims, rights or

1  disputes arising from or related to the implementation of this Order.

2                                           ###

# DECLARATION OF BRAD W. SMITH

I, Brad W. Smith, hereby declare as follows:

1.  I am a Senior Managing Director at GlassRatner Advisory & Capital Group LLC, proposed financial advisors to John C. Hueston as chapter 11 trustee (the "Chapter 11 Trustee") in the above-captioned bankruptcy case of Morgan Drexen, Inc. (the "Debtor"), and a Certified Public Accountant.

2.  Since the time of the Chapter 11 Trustee's appointment on May 14, 2015 (as well as beforehand when the chapter 7 trustee was in place), I have been working full time at the Debtor's premises in an effort to gain understanding of, among other things, the Debtor's operations, cash flows, receipts and disbursements.  In this capacity, I have been serving, in effect, as interim Chief Financial Officer.

3.  I submit this Declaration in support of the *Emergency Motion of Chapter 11 Trustee for Interim and Final Approval of the Use Cash Collateral for the Period from May 14, 2015 Through August 28, 2015.*

4.  Attached as **Exhibit 1** hereto is a true and correct copy of a budget (the "Budget"), which I prepared based on the available information provided to me by accounting personnel of the Debtor.

5.  I believe that the Budget represents the best estimate of the Debtor's income and expenses through August 28, 2015, although the overall budget may vary by as much as 20%.

6.  The Debtor is required to meet payroll obligations under California law on June 5, 2015 in the amount of approximately $101,000, as well as pay critical operating expenses prior to the hearing on final approval of this Motion.  If these obligations are not met, employees will not receive their paychecks, and the estate could face penalties under state law, and the estate will be unable to meet its post-petition obligations.

7.  Since taking over the Debtor's operations, the Chapter 11 Trustee has substantially reduced the Debtor's expenses, resulting in a positive cash flow of over $368,000 from May 15, 2015 to May 29, 2015, prior to payment of fees for chapter 11 professionals.  As of May 29, 2015, the Debtor had a cash balance in the amount of $372,993.  The projected cash balance as of

1    August 28, 2015 is expected to be in the amount of $226,632 (after payment of certain estimated

2    professional fees).  In order to operate the business for the benefit of creditors, including the IRS,

3    the Chapter 11 Trustee must be authorized to utilize this cash in accordance with the Budget.

4          I declare under penalty of perjury under the laws of the United States of America that the

5    foregoing is true and correct.

6          Executed this 2nd day of June 2015, at Costa Mesa, California.

7    

8                        Brad W. Smith

1

2                                        **EXHIBIT 1**

3                                         (Budget)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Morgan Drexen**

Cash Flow Forecast

| | Actual | Actual | Actual | 1 Forecast | 2 Forecast | 3 Forecast | 4 Forecast | 5 Forecast | 6 Forecast |
|---|---|---|---|---|---|---|---|---|---|
| Week Ending | 5/15/2015 | 5/22/2015 | 5/29/2015 | 6/5/2015 | 6/12/2015 | 6/19/2015 | 6/26/2015 | 7/3/2015 | 7/10/2015 |
| **INFLOWS:** | | | | | | | | | |
| Net Inflows for AR | 4,067 | 433,500 | 177,245 | 459,200 | 307,213 | 263,494 | 235,466 | 352,120 | 439,026 |
| Misc Cash In (Sub Lease, Misc.) | | | | 22,000 | - | - | 22,000 | - | - |
| **Total Inflows** | 4,067 | 433,500 | 177,245 | 481,200 | 307,213 | 263,494 | 257,466 | 352,120 | 439,026 |
| **OUTFLOWS:** | | | | | | | | | |
| Bank Fees & ACH Processing | | | 15 | - | - | 56,000 | - | - | - |
| Payroll (Weekly Comm) | - | 25,248 | 14,280 | 35,000 | 75,000 | 30,000 | 30,000 | 35,000 | 75,000 |
| Payroll (Salaried) | - | 88,611 | | 66,000 | - | 66,000 | - | 63,000 | - |
| Payroll (Hourly & Commissioned) | 38,379 | 157,076 | - | - | 135,000 | - | 145,000 | - | 145,000 |
| Termination Net Checks | | | 12,769 | | | | | | |
| **Payroll Total** | 38,379 | 283,704 | 14,280 | 101,000 | 210,000 | 96,000 | 175,000 | 98,000 | 220,000 |
| Unum (Employee Ins) | | | | 1,475 | - | 1,700 | - | - | - |
| Provident Life | | | | - | - | 500 | - | - | - |
| Blue Shield Health Insurance | | | | - | 46,000 | - | - | - | - |
| Anthem Blue Cross L &H | | | | - | 600 | - | - | - | - |
| United Concordia (Dental Insurance) | | | | - | 4,000 | - | - | - | - |
| Chubb ( WC and Corp Insurance) | | | | 11,000 | - | 11,000 | - | - | - |
| **Insurance Total** | - | - | - | 12,475 | 50,600 | 13,200 | - | - | - |
| Global Crossing | | | | 14,317 | - | 14,500 | - | - | - |
| AT&T | | | 491 | - | 600 | - | - | - | 600 |
| ACC Business | | | | 2,692 | - | - | 3,000 | - | - |
| TW Telecom | | | | 1,181 | 1,195 | - | - | - | - |
| WCI | | | | 3,510 | - | 3,500 | - | - | - |
| **Telephone Total** | - | - | 491 | 21,700 | 1,795 | 18,000 | 3,000 | - | 600 |
| **Rent & HVAC/Utilities** | | | | 16,000 | - | - | - | 145,000 | - |
| Infinity Software (HR Software) | | | | - | - | 400 | - | - | - |
| Wage Works (HR) | | | | - | - | 128 | - | - | - |
| People G2( HR) | | | | - | - | - | 300 | - | - |
| Printing | | | | - | 2,000 | 3,000 | - | - | 2,000 |
| Iron Mountain | | | | - | - | 600 | - | - | - |
| Quench | | | | - | 425 | - | - | - | - |
| Monster ( HR Job Board) | | | | - | - | 500 | - | - | - |
| Control Air Conditioning Service | | | | - | - | - | 360 | - | - |
| Agua Knowledge (discontinued) | | | | - | - | - | - | - | - |
| Staples | | | | - | - | 2,500 | - | - | - |
| Vision Computer | | | | - | 750 | - | - | - | - |
| Zones | | | | - | 400 | - | - | - | - |
| Continental Vending | | | | - | - | 500 | - | - | - |
| West Coast Interior Scapes (Plant Service) | | | | - | - | 185 | - | - | - |
| GHA Technologies Inc (Computer Supplier) | | | | - | - | - | - | - | - |
| **Office G&A** | - | - | - | - | 3,575 | 7,813 | 660 | - | 2,000 |
| Johnny Findley(Facilities) | | | 1,535 | - | 1,750 | - | 1,750 | - | 1,750 |
| Joseph Lizura(P/R) | | | | - | - | - | - | - | - |
| RKL eSolutions (Mas500 Licensing/Support) | | | | - | 7,500 | - | - | - | - |
| **Outside Services (Contract Services)** | - | - | 1,535 | - | 9,250 | - | 1,750 | - | 1,750 |
| UPS | | | | - | 12,000 | 10,000 | 10,000 | 10,000 | 12,000 |
| Marlin/Blazer Mail Room Software System | | | | 3,200 | - | - | - | - | 1,600 |
| Ace Parking Services | | | | - | 5,000 | - | - | - | 5,000 |
| Postage | | | | 9,000 | 4,500 | 6,000 | 2,000 | 1,500 | 4,500 |
| Easy Permit (Postage Meter) | | | | - | - | 1,600 | - | - | - |
| Contingency - 10% of Disbursements | | | | 16,300 | 29,700 | 20,900 | 19,300 | 25,500 | 24,800 |
| **Total Outflows** | 38,379 | 283,704 | 16,321 | 179,675 | 326,420 | 229,513 | 211,710 | 280,000 | 272,250 |
| **Cash Flow from Operations** | (34,312) | 149,796 | 160,924 | 301,525 | (19,207) | 33,981 | 45,756 | 72,120 | 166,776 |
| **Non-Operating Cash** | | | | | | | | | |
| Funding from Ch7 Trustee Account | 38,379 | | 58,206 | | | | | | |
| Professional Fees - Billed | | | | | | | | | |
| Hueston Hennigan | - | - | - | - | (135,950) | - | (100,000) | - | (100,000) |
| Greenberg Gross | - | - | - | - | (150,000) | - | (100,000) | - | (100,000) |
| GlassRatner | - | - | - | - | (160,240) | - | (89,550) | - | (81,200) |
| Unpaid Professional Fees | - | - | - | - | - | - | 40,000 | - | 40,000 |
| Adequate Assurance Payment for Future Utility Services | | | | (10,162) | - | - | - | - | - |
| **Total Non-Operating Cash Sources (Uses)** | 38,379 | - | 58,206 | (10,162) | (446,190) | - | (249,550) | - | (241,200) |
| **Net Cash Flow** | 4,067 | 149,796 | 219,130 | 291,363 | (465,397) | 33,981 | (203,794) | 72,120 | (74,424) |
| Beginning Cash | - | 4,067 | 153,863 | 372,993 | 664,356 | 198,959 | 232,940 | 29,146 | 101,266 |
| **Ending Cash** | 4,067 | 153,863 | 372,993 | 664,356 | 198,959 | 232,940 | 29,146 | 101,266 | 26,842 |

**Morgan Drexen**

Cash Flow Forecast

|  | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|
|  | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| Week Ending | 7/17/2015 | 7/24/2015 | 7/31/2015 | 8/7/2015 | 8/14/2015 | 8/21/2015 | 8/28/2015 |
| **INFLOWS:** | | | | | | | |
| Net Inflows for AR | 245,381 | 238,278 | 220,147 | 558,040 | 178,826 | 269,891 | 233,437 |
| Misc Cash In (Sub Lease, Misc.) | - | - | 22,000 | - | - | - | 22,000 |
| **Total Inflows** | 245,381 | 238,278 | 242,147 | 558,040 | 178,826 | 269,891 | 255,437 |
| **OUTFLOWS:** | | | | | | | |
| Bank Fees & ACH Processing | 56,000 | - | - | - | 56,000 | - | - |
| | | | | | | | |
| Payroll (Weekly Comm) | 30,000 | 30,000 | 30,000 | 35,000 | 75,000 | 35,000 | 35,000 |
| Payroll (Salaried) | - | 63,000 | - | 63,000 | - | 63,000 | - |
| Payroll (Hourly & Commissioned) | - | 145,000 | - | 154,000 | - | 135,000 | - |
| Termination Net Checks | | | | | | | |
| **Payroll Total** | 30,000 | 238,000 | 30,000 | 252,000 | 75,000 | 233,000 | 35,000 |
| | | | | | | | |
| Unum (Employee Ins) | 1,200 | - | - | - | - | 1,200 | - |
| Provident Life | 300 | - | - | - | - | 300 | - |
| Blue Shield Health Insurance | 44,000 | - | - | - | - | 39,000 | - |
| Anthem Blue Cross L &H | 500 | - | - | - | - | 400 | - |
| United Concordia (Dental Insurance) | 3,000 | - | - | - | - | 3,000 | - |
| Chubb ( WC and Corp Insurance) | - | - | - | - | - | - | - |
| **Insurance Total** | 49,000 | - | - | - | - | 43,900 | - |
| | | | | | | | |
| Global Crossing | - | 14,500 | - | - | - | 14,500 | - |
| AT&T | - | - | - | - | 600 | - | - |
| ACC Business | - | 3,000 | - | - | - | 3,000 | - |
| TW Telecom | 1,195 | - | - | - | 1,195 | - | - |
| WCI | 3,500 | - | - | - | 3,500 | - | - |
| **Telephone Total** | 4,695 | 17,500 | - | - | 5,295 | 17,500 | - |
| | | | | | | | |
| Rent & HVAC/Utilities | - | - | - | 145,000 | - | - | - |
| | | | | | | | |
| Infinity Software (HR Software) | 400 | - | - | - | - | 400 | - |
| Wage Works (HR) | - | 128 | - | - | - | 128 | - |
| People G2( HR) | - | 300 | - | - | - | 300 | - |
| Printing | - | 3,000 | - | - | 2,000 | - | 3,000 |
| Iron Mountain | 600 | - | - | - | - | 600 | - |
| Quench | 425 | - | - | - | 425 | - | - |
| Monster ( HR Job Board) | - | 500 | - | 469 | - | 500 | - |
| Control Air Conditioning Service | - | - | - | - | - | - | 360 |
| Agua Knowledge (discontinued) | - | - | - | 300 | - | - | - |
| Staples | - | 2,500 | - | 500 | - | - | 2,500 |
| Vision Computer | 1,000 | - | - | - | - | 750 | - |
| Zones | 400 | - | - | - | - | 400 | - |
| Continental Vending | - | 500 | - | - | - | 500 | - |
| West Coast Interior Scapes (Plant Service) | - | 185 | - | 185 | - | 185 | - |
| GHA Technologies Inc (Computer Supplier) | 1,000 | - | - | 1,230 | - | - | - |
| **Office G&A** | 3,825 | 7,113 | - | 2,684 | 2,425 | 3,763 | 5,860 |
| | | | | | | | |
| Johnny Findley(Facilities) | - | 1,750 | - | 1,750 | - | 1,750 | - |
| Joseph Lizura(P/R) | - | - | - | - | - | - | - |
| RKL eSolutions (Mas500 Licensing/Support) | 400 | - | - | - | 400 | - | - |
| **Outside Services (Contract Services)** | 400 | 1,750 | - | 1,750 | 400 | 1,750 | - |
| | | | | | | | |
| UPS | 10,000 | 10,000 | 10,000 | 10,000 | 12,000 | 10,000 | 10,000 |
| Marlin/Blazer Mail Room Software System | - | - | - | - | 1,600 | - | - |
| Ace  Parking Services | - | - | - | 5,000 | - | - | - |
| Postage | 4,000 | 2,500 | 4,500 | 4,500 | 4,500 | 5,500 | 1,500 |
| Easy Permit (Postage Meter) | - | 1,600 | - | - | - | 1,600 | - |
| | | | | | | | |
| Contingency - 10% of Disbursements | 15,800 | 27,900 | 4,500 | 42,100 | 15,700 | 31,800 | 5,200 |
| **Total Outflows** | 173,720 | 306,363 | 49,000 | 463,034 | 172,920 | 348,813 | 57,560 |
| | | | | | | | |
| **Cash Flow from Operations** | 71,661 | (68,085) | 193,147 | 95,006 | 5,906 | (78,922) | 197,877 |
| | | | | | | | |
| **Non-Operating Cash** | | | | | | | |
| Funding from Ch7 Trustee Account | | | | | | | |
| Professional Fees - Billed | | | | | | | |
| Hueston Hennigan | - | (100,000) | - | (100,000) | - | (100,000) | - |
| Greenberg Gross | - | (100,000) | - | (100,000) | - | (100,000) | - |
| GlassRatner | - | (76,800) | - | (76,800) | - | (76,800) | - |
| Unpaid Professional Fees | - | 276,800 | - | 276,800 | - | 60,000 | - |
| Adequate Assurance Payment for Future Utility Services | | | | | | (216,800) | |
| **Total Non-Operating Cash Sources (Uses)** | - | - | - | - | - | (216,800) | - |
| | | | | | | | |
| **Net Cash Flow** | 71,661 | (68,085) | 193,147 | 95,006 | 5,906 | (295,722) | 197,877 |
| Beginning Cash | 26,842 | 98,503 | 30,418 | 223,565 | 318,571 | 324,478 | 28,755 |
| **Ending Cash** | 98,503 | 30,418 | 223,565 | 318,571 | 324,478 | 28,755 | 226,632 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

650 Newport Center Drive, Suite 1750, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND EMERGENCY MOTION OF CHAPTER 11 TRUSTEE FOR INTERIM AND FINAL APPROVAL OF THE USE OF CASH COLLATERAL FOR THE PERIOD FROM MAY 14, 2015 THROUGH AUGUST 28, 2015; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF EVAN C. BORGES AND BRAD W. SMITH IN SUPPORT THEREOF**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 6/2/15, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

*Service information continued on attached page*

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)_____ , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 6/2/15, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Personal Delivery:**

Honorable Scott C. Clarkson
 United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130/ Courtroom 5C
Santa Ana, CA 92701-4593

Honorable Catherine E. Bauer
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5165 / Courtroom 5D
Santa Ana, CA 92701-4593

**Via Facsimile:**
Internal Revenue Service
Attn:  Sabina Makarov
Facsimile:  (855) 838-8061

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Simon Aron**    saron@wrslawyers.com
- **Reem J Bello**    rbello@wgllp.com, kadele@wgllp.com;lfisk@wgllp.com;tziemann@wgllp.com
- **Frank Cadigan**    frank.cadigan@usdoj.gov
- **Michael J Hauser**    michael.hauser@usdoj.gov
- **James Andrew Hinds**    jhinds@jhindslaw.com, zbilowit@jhindslaw.com
- **John C Hueston (TR)**    jhueston@hueston.com, lhiles@hueston.com
- **Elan S Levey**    elan.levey@usdoj.gov, louisa.lin@usdoj.gov
- **Michael P McMahon**    mmcmahon@ggtriallaw.com, eborges@ggtriallaw.com
- **R G Pagter**    gibson@ppilawyers.com, ecf@ppilawyers.com
- **Paul R Shankman**    pshankman@jhindslaw.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Barouir B Yeretzian**    byeretzian@jhindslaw.com, yeretzian@gmail.com


3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:**

**Via UPS Early A.M. Overnight Delivery:**

Baute Crochetiere & Gilford LLP 777
S. Figueroa Street
Los Angeles CA 90017

Ciano & Goldwasser, LLP
101 Prospect Ave., W. Suite 1610
Cleveland, OH 44115

Foley & Lardner LLP
777 E. Wisconsin Ave
Milwaukee WI 53202

Goodwin & Goodwin, LLP
300 Summers street, Suite 1500
Charleston, WV 25301

Goodwin & Goodwin, LLP
901 New York Avenue, NW
Washington, DC 20001

Kirkland & Ellis, LLP
655 Fifteenth Street, N.W. Washington
DC 20005

Kravitz, Inc.
15760 Ventura Blvd, Ste 910,
Encino, CA 91436

Kravitz, Inc.
16030 Ventura Blvd. Suite 200
Encino, CA 91436

Lauren E. Jones
72 South Main Street
Providence RI 02903

Maslon LLP
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-4140

Meissner, Tierney, Fisher &
   Nichols, S.C
111 E. Kilbourne Ave, 19th Floor
Milwaukee WI 53202

Scott Baugh & Associates
4040 MacArthur Blvd, Suite 200
Newport Beach CA 92660

Thomas J. Maronick 5911
Charlesmead Rd
Baltimore MD 21212

Thomas Maronick
201 North Charles Street Baltimore,
MD 21201

Venable LLP
575 7th Street, NW
Washington DC 20004

Von Briesen & Roper, S.C.
411 E. Wisconsin Ave, Suite 1000
Milwaukee WI 53202

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE

*Service information continued on attached page*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 6/2/15 | Christine Hipp | *Christine Hipp* |
|--------|----------------|------------------|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**